IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BAKYTBEK ABDRAIMOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 26-cv-1471 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| BRISON SWEARINGEN,* Sheriff, Clay | ) | |
| County, Indiana, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In this habeas corpus proceeding under 28 U.S.C. § 2241, Bakytbek Abdraimov, a citizen of Russia and applicant for asylum in the United States, challenges the lawfulness of his detention by federal immigration officials under the authority of 8 U.S.C. § 1225(b)(2)(A) without holding a bond hearing. Pet. Writ Habeas Corpus ¶ 16, Dkt. No. 1 [hereinafter Pet.]. For the following reasons, the court grants the petition and orders that a bond hearing be held in accordance with 8 U.S.C. § 1226(a).

### BACKGROUND

Abdraimov presented himself for inspection at the port of entry in Laredo, Texas, on May 16, 2023. *See* Notice to Appear 1, Dkt. No. 10-1 (dated May 17, 2023); 8 U.S.C. §§ 1182(a)(7)(A). Due to his asylum claim, he was permitted to enter physically into the United States as a humanitarian parolee. *See* 8 U.S.C. §§ 1182(d)(5)(A). Abdraimov was also issued a Notice to Appear ("NTA") initiating removal proceedings in the immigration court located in Chicago. *See* Notice to Appear 4. Besides his pending asylum claim, Abdraimov also has an

---

* The habeas petition named four respondents. Dkt. No. 1. At the status hearing held February 27, 2026, the parties agreed to substitute Abdraimov's current legal custodian as the sole and proper respondent, Brison Swearingen, the Sheriff of Clay County, Indiana. In this order, respondent's name is spelled as it appears in public records. To the extent required, the record is corrected pursuant to Fed. R. Civ. P. 60(a)(1) to reflect that the respondent's first name is spelled "Brison" rather than "Brinson."

application for withholding of non-admissibility.  Pet. ¶ 44.  Abdraimov's removal and asylum proceedings remain pending, as far as this record discloses.  *See id.*

Government records reflect that Abdraimov's parole expired on May 14, 2024, approximately one year after he was paroled at Laredo.  *See* Dkt. No. 13-1 at 1 (screenshot of government database, accessed Feb. 23, 2026, listing Abdraimov's "Admit Until" date, which presumptively is his parole expiration date).  Abdraimov does not dispute that his term of parole has expired.  Citing no authority, respondent asserts that Abdraimov was "released on recognizance" when his term of humanitarian parole expired. [1]  Suppl. Resp. 2; *see* Mem. to File, Feb. 9, 2026, Dkt. No. 19 at 2.

Abdraimov has lived in the United States since 2023.  Pet. ¶ 41.  He represents that he is "gainfully employed" and has no criminal history.  Pet. ¶¶ 44, 46.  He has a U.S. citizen child and is the "main financial provider" for his family.  Pet. ¶¶ 45–46.  U.S. Immigration and Customs Enforcement officials arrested Abdraimov at an "ICE check-in appointment" on February 9, 2026.  Pet. ¶ 42.  He filed this habeas petition the same day.  Dkt. No. 1.

### ANALYSIS

The primary dispute here concerns the source of the government's statutory authority to detain Abdraimov.  Abdraimov argues that he is detained under 8 U.S.C. § 1226(a), which entitles a detainee to a bond hearing.  Respondent contends that Abdraimov is properly classified as an "arriving alien," subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A).  Resp. to Pet. 2, Dkt. No. 10.

Respondent begins by reprising arguments the government has advanced in many habeas corpus petitions filed by immigration detainees in the wake of *Matter of Yajure Hurtado.* 29 I. & N. Dec. 216 (BIA 2025).  Since that decision, there has been considerable litigation over whether a person who entered the United States without presenting for inspection is subject to mandatory

---

[1] The record is inconsistent as to whether Abdraimov's parole expired in one or two years.  *Compare* Dkt. No. 10 at 2 (respondent's memorandum of law), *with* Dkt. No. 13-1 at 1 (screenshot of government database).  This inconsistency does not affect the analysis here because there is no dispute that Abdraimov's humanitarian parole has expired.

detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A) or is instead entitled to a bond hearing in accordance with § 1226(a). This court analyzed these arguments in *Bernal Ayon v. Olson* and adopted the reasoning and holding of the vast majority of district courts. No. 25-cv-13583 (N.D. Ill. Nov. 12, 2025); *see also Barco Mercado v. Francis*, 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (collecting citations to 350 decisions adopting the majority view). These decisions conclude that such persons are generally subject to 8 U.S.C. § 1226 and therefore entitled to an individualized bond hearing, as § 1226 requires. *Bernal Ayon*, Order at 2 (collecting citations).

Respondent in the case at bar cites nine district court decisions taking the minority position on the construction of 8 U.S.C. §§ 1225 and 1226. *See* Resp. to Pet. 3–4, Dkt. No. 10 (collecting citations). After reviewing respondent's cases, this court remains persuaded by the reasoning of cases espousing the majority view and finds further support in the Seventh Circuit's preliminary analysis of the text and structure of § 1225 and § 1226 in *Castañon-Nava v. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025). *Castañon-Nava* came before the Seventh Circuit on an appeal of a preliminary injunction. Nevertheless, the panel opinion engages directly with the statutory interpretation arguments respondent advances here, which are identical to those the government has pressed in other habeas cases. *See Castañon-Nava*, 161 F.4th at 1060–63. Consistent with the Seventh Circuit's guidance, this court adheres to the majority view it adopted in *Bernal Ayon*. *See also Vasquez Pacheco v. Crowley*, 2026 WL 658890, at *2–5 (N.D. Ill. Mar. 9, 2026).

The analysis would be at an end were it not for the fact that, unlike the petitioners in many recent cases, Abdraimov entered the United States as a humanitarian parolee. The INA provision governing humanitarian parole reads as follows:

> The Secretary of Homeland Security may, [with exceptions not presently relevant], in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole

shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

As used in this statute, parole refers to a discretionary power to release a detainee from statutorily-authorized custody, permitting the immigration detainee to move about the United States while removal proceedings take their course. *See Ekekhor v. Aljets*, 979 F. Supp. 640, 642 n.2 (N.D. Ill. 1997). Abdraimov's parole expired one year after he entered the United States, and it has not been renewed. *See* 8 C.F.R. § 212.5(e)(1). Regarding custody, the humanitarian parole statute states explicitly what must happen when parole is terminated—the former parolee "shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C.§ 1182(d)(5)(A). That did not happen when Abdraimov's parole expired, however. Instead, he continued to work and live in the United States for more than eighteen months until ICE officials arrested him in February 2026.

Respondent argues that when Abdraimov's parole expired, he was released on "recognizance." Indeed, a memorandum dated February 9, 2026, documenting Abdraimov's arrest confirms that he was released on "recognizance." Dkt. No. 20 at 2. Respondent identifies no authority authorizing the release of a humanitarian parolee on recognizance. *See id.* The parties identify three INA provisions that potentially authorized Abdraimov's release in May 2024. The first, governing humanitarian parole, is quoted above. *See* 8 U.S.C. § 1182(d)(5)(A). This statute uses the mandatory word "shall:" "shall forthwith . . . be returned to the custody from which he was paroled." *Id.* The word "shall" ordinarily signifies a requirement. *See, e.g., Maine Cmty. Health Options v. United States*, 590 U.S. 296, 311 (2020). Respondent suggests no way to read "shall be taken into custody" in § 1182(d)(5)(A) as affording an exception for release on recognizance.

4

That leaves the two immigration detention statutes the parties cite, which have been at issue in many habeas cases in the past six months. Respondent argues that 8 U.S.C. § 1225(b)(2)(A) authorizes Abdraimov's detention without a bond hearing. As it did in the humanitarian parole provision discussed in the previous paragraph, Congress used mandatory language in § 1225(b)(2)(A) as well: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," *i.e.*, a removal proceeding. 8 U.S.C. § 1225(b)(2)(A). As with § 1182(d)(5)(A), respondent suggests no means of reading an exception for release on personal recognizance into § 1225(b)(2)(A). Indeed, the Supreme Court's decision in *Jennings v. Rodriguez* forecloses any such argument. "Read most naturally, § 1225(b)(1) and (b)(2) mandate detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018).

In contrast, the third INA provision under consideration—the one on which Abdraimov relies—uses non-mandatory language to authorize detention. It reads: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Unlike § 1225, § 1226(a) permits, with exceptions not applicable here, a detainee to be released "on . . . bond" or "conditional parole." § 1226(a)(2); *see Jennings*, 583 U.S. at 288; *see also* § 1226(c) (mandatory detention exceptions not at issue here). Consistent with the statutory text and *Jennings*, the Board of Immigration Appeals has cited § 1226(a) as the source of statutory authority to release a detainee on personal recognizance. *See In re Adeniji*, 22 I. & N. Dec. 1102, 1103–04 (B.I.A. 1999); *see also* 8 C.F.R. § 236.1(c). Since § 1226(a) is the sole source of statutory authority for Abdraimov's discretionary release on personal recognizance, that section of the INA, which guarantees a bond hearing, governs his re-detention after he was arrested on February 9, 2026. *See Jennings*, 583 U.S. at 306.

Every federal district court which has analyzed this issue has reached the same conclusion: § 1226(a) governs when, as here, a humanitarian parolee is released on personal recognizance and later rearrested. *See Briceno Solano v. Mason*, 2026 WL 311624, at *15 (S.D.W. Va. Feb. 4, 2026); *Rivera Esperanza v. Francis*, 2025 WL 3513983, at *6–7 (S.D.N.Y. Dec. 8, 2025); *Helal v. Janecka*, 2025 WL 3190132, at *4 (C.D. Cal. Oct. 24, 2025); *De Andrade v. Moniz*, 802 F.Supp.3d 325, 330–33 (D. Mass. 2025); *Rodriguez v. Bostock*, 802 F.Supp.3d 1297, 1323–36 (W.D. Wash. 2025); *Hasan v. Crawford*, 800 F.Supp.3d 641, 653–57 (E.D. Va. 2025). This court is persuaded by these cases, which analyze the precise issue presented here.

One point deserves emphasis, however. In the present case, the government has relied on § 1226(a). The officer who arrested Abdraimov on February 9, 2026, issued a warrant that cited § 1226(a) as the authority to arrest him. Dkt. No. 19 at 3. Respondent maintains in his briefing that Abdraimov has been on "recognizance" since his term of parole expired, a status that, as explained above, is authorized only by § 1226(a). Dkt. No. 20 at 2. As other courts have found, by releasing Abdraimov on recognizance under § 1226(a), "[T]he government failed to reserve its right to treat petitioner 'in the same manner as that of any other applicant for admission to the United States' . . . [and] extinguished the legal fiction that a non-citizen who is physically present in the United States has, in fact, not effected an entry into the United States." *De Andrade*, 802 F. Supp. 3d at 332 (quoting § 1182(d)(5)(A)). Accordingly, Abdraimov "must be treated like any other unlawfully 'present' non-citizen. The lawfulness of his detention is governed by 8 U.S.C. § 1226." *Id.*

For the reasons stated, Abdraimov's petition for a writ of habeas corpus, Dkt. No. 1, is granted. Abdraimov does not request immediate release. Rather, he asks this court to order that a statutory bond hearing under 8 U.S.C. § 1226(a) be held promptly. Pet. 15–16. The court orders as follows:

On or before March 24, 2026, respondent must either: (1) provide petitioner with a bond hearing before an Immigration Judge, at which the government shall bear the burden of

6

justifying, by clear and convincing evidence of dangerousness or flight risk, petitioner's continued detention; or (2) release petitioner from custody. A joint status report is due by noon on March 25, 2026.

Date: March 19, 2026                                    /s/ Joan B. Gottschall
                                                        United States District Judge